UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTAL GARY,** | ) NO. EDCV 06-00201-MAN |
| **Plaintiff,** | ) |
| | ) MEMORANDUM OPINION AND ORDER |
| v. | ) |
| **MICHAEL J. ASTRUE,**[1] | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| **Defendant.** | ) |

Plaintiff filed a Complaint on March 3, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner") of his claim for supplemental security income payments ("SSI"). On March 24, 2006, the parties consented to proceed before the undersigned, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on November 7, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding the case for further proceedings; and Defendant requests that the Commissioner's

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. *See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).

decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on June 6, 2003. (Administrative Record ("A.R.") 52-54.)  Plaintiff claims to have been disabled since January 1, 1989, due to high blood pressure, diabetes mellitus, an enlarged heart, a history of stroke and seizures, and depression.  (A.R. 12, 52, 58, 70.)  He has no past relevant work experience.  (A.R. 14.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On May 4, 2005, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Jay Levine ("ALJ").  (A.R. 337-81.)  On August 18, 2005, the ALJ denied Plaintiff's SSI claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 10-15, 4-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his August 18, 2005 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 13, 2003.  (A.R. 12.)  The ALJ found that Plaintiff has a combination of "severe" impairments, consisting of hypertensive cardiovascular disease, non-insulin dependent diabetes mellitus, atherosclerotic heart disease, history of depression, history of stroke and transient ischemic attacks,

and history of seizures, but Plaintiff's impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (A.R. 12-13.) In addition, the ALJ found that Plaintiff's testimony regarding his impairments and limitations was not entirely credible. (A.R. 13.) The ALJ further found that Plaintiff was a "younger individual" at the time of the decision pursuant to 20 C.F.R. § 416.963, has a history of special education but is a high school graduate from a regular education program, and is literate and able to communicate in English pursuant to 20 C.F.R. § 416.968. (A.R. 14.)

The ALJ found that Plaintiff has the following residual functional capacity:

> [Plaintiff has the] residual functional capacity to lift, carry, push and/or pull twenty pounds occasionally, and ten pounds frequently . . .; stand and/or walk frequently with customary breaks; sit constantly with customary breaks; less than occasional climbing; and occasional stooping, crouching, kneeling, or crawling. He should avoid jobs requiring good verbal communications and exposure to temperature extremes and hazards such as unprotected heights and dangerous machinery.[2]

(A.R. 13.) The ALJ also found that Plaintiff has no past relevant work experience pursuant to 20 C.F.R. § 416.965, and that transferability of job skills was not material to the determination of disability in

---

[2] This is commensurate with work at the "light" exertional level, which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

3

Plaintiff's case pursuant to 20 C.F.R. § 416.968. (A.R. 14.) Based on this residual functional capacity, the ALJ found that Plaintiff could perform a number of jobs in the national economy. (A.R. 15.) Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and

free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges four issues. First, he contends that the ALJ failed to consider the opinion of his treating psychologist adequately. Second, he contends that the ALJ did not assess his claimed mental impairment in compliance with the applicable Social Security regulation.[3] Third, he contends that the ALJ erred by failing to consider the impact of the side effects of his medications on his ability to work. Fourth, he contends that the ALJ failed to pose a complete hypothetical question to the vocational expert.

**A.   The ALJ's Finding Regarding Plaintiff's Claimed Mental Impairment Constitutes Error.**

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and, therefore, have a greater opportunity to know and observe the claimant. Smolen, 80 F.3d at 1279; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing"

---

[3] Because Plaintiff's first two issues pertain to the propriety of the ALJ's finding regarding Plaintiff's claimed mental impairment, the Court addresses them together in Section A, *infra*.

reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating physician's opinion is contradicted, the ALJ may reject it in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

In March 2005, Plaintiff sought treatment from the San Bernardino County Department of Behavioral Health. On March 22, 2005, a "clinician"[4] prepared an assessment of Plaintiff and stated:

> [Plaintiff] presents with depression, [visual hallucinations] [and] anger problems. No [suicidal ideation]. [History] of domestic violence. Attempted to shoot his ex-wife in 1985. (Bullet missed her by 2 inches). Wife called police on him one month ago when he threatened her. He is [a] care-provider to his elderly mother (83 years old) and disabled wife.

(A.R. 248.) The assessment further notes that Plaintiff: had a substance abuse problem until three years earlier, when he received treatment (*id.*); had anger problems (A.R. 249); took anti-depressants in

---

[4] Although Plaintiff contends that this assessment was completed by a treating psychologist, the signatures throughout the assessment form are illegible, as is the signatory's title. Consequently, the identity and status of the person who completed the above-described March 22, 2005 assessment is unclear. However, given the indication that the signatory was "authorized to diagnose" (A.R. 254) and that Defendant does not dispute Plaintiff's contention that the March 22, 2005 assessor was a psychologist, the Court will assume that to be the case.

1992 (A.R. 250); had coherent and organized speech and "fair" insight and judgment (A.R. 251); had short-term and long-term memory problems (*id.*); had some paranoid ideation and audio and visual hallucinations (*id.*); and had a depressed mood and constricted affect (*id.*). In addition, Plaintiff was observed to have "significant impairment in an important area of life functioning" and a "probability of a significant deterioration in an important area of life functioning." (A.R. 253.) The psychologist opined that Plaintiff was "unable to work presently." (A.R. 252.) Plaintiff was diagnosed with major depressive disorder, recurrent and severe with psychotic features, and assessed with a Global Assessment of Functioning ("GAF") of 44.[5] (A.R. 254.) (Hereafter, for shorthand purposes, these medical records will be referred to as the "March 2005 assessment.")

Less than three months later, Dr. Robert Moore, a neurologist and psychiatrist, examined Plaintiff at the request of the Commissioner and issued a report on June 13, 2005. (A.R. 328-31.) With respect to Plaintiff's mental limitations,[6] Dr. Moore found only that Plaintiff "is cognitively intact" and "can follow simple and complex commands and perform simple and complex demands"; he diagnosed Plaintiff with: a "[h]istory of generalized tonic-clonic seizures" and "[p]ossible left ulnar neuropathy. (A.R. 330-31.) Dr. Moore noted that Plaintiff was

---

[5] A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders Text Revision, 34 (4th ed. 2000).

[6] Dr. Moore principally opined regarding Plaintiff's various exertional and manipulative limitations. (A.R. 331.)

7

taking, *inter alia*, Abilify, an anti-psychotic medication, Cymbalta and Elavil, anti-depressant medications, and Dilantin and Gabapentin, anti-seizure medications. (A.R. 329.) In describing the medical records he reviewed, Dr. Moore noted only: a September 2003 note indicating that Plaintiff claimed his head hurt; a December 2003 note indicating that Plaintiff had experienced a "witnessed seizure"; and a July 2002 "normal" CT scan of Plaintiff's brain. (*Id.*)

At step two of the sequential evaluation, the ALJ found that Plaintiff has a "severe combination of impairments," which includes a "history of depression." (A.R. 12.) However, at step three, the ALJ concluded that "the medical evidence does not establish any significant medically determinable mental impairment." (A.R. 13.) The ALJ failed to include any mental limitations when determining Plaintiff's residual functional capacity. (A.R. 13-14.)

In considering the evidence pertaining to Plaintiff's claimed mental impairment, the ALJ discussed both the March 2005 assessment and Dr. Moore's June 2005 report as follows:

> [Plaintiff] sought treatment at a public mental health clinic in March 2005, reporting a history of depression, anger problems, domestic violence, and crack cocaine and alcohol abuse in remission for three years following inpatient treatment. Ex. 8F at 3. He also reported paranoid delusion, visual hallucinations, memory problems, and drug flashbacks, and he presented with depressed mood and constricted affect, but his speech was coherent and organized and he was well

>     oriented with average intelligence. Ex. 8F at 6. A Global
>     Assessment of Functioning (GAF) score of 44 was assessed,
>     indicating a serious degree of limitation in one area of
>     functioning with otherwise moderate limitation of functioning,
>     and it is apparent the serious problem involved his having
>     problems with anger while caring for his elderly mother and
>     his disabled wife. Ex. 8F at 9 and 4. He was referred to an
>     anger management program and a local mental health clinic.
>     *Id*. There is no evidence of any mental health treatment, and
>     the mini-mental status examination at the time of the
>     consultative neurological evaluation was negative although he
>     reported having seen a "psychiatrist" for stress for four
>     months. Ex. 10F at 2.
>
>        . . . .
>
>     Notwithstanding [Plaintiff's] emphasis of psychotic symptoms
>     at the hearing, *the medical evidence does not establish any
>     significant medically determinable mental impairment* given his
>     lack of treatment for any affective or psychotic disorder as
>     well as the recent negative mental status examination findings
>     of a Diplomate of the American Board of Psychiatry and
>     Neurology.

(A.R. 12-13; emphasis added.) In setting forth Plaintiff's residual functional capacity, the ALJ found no mental limitations. (A.R. 13.)

Plaintiff contends that the ALJ erred in finding that Plaintiff had

9

no medically determinable mental impairment, given the March 2005 assessment described above. Plaintiff asserts that the ALJ further erred by failing to follow the procedure for evaluating mental impairments required by 20 C.F.R. § 416.1520a(e)(2).[7]

The ALJ's finding that Plaintiff has a "history of depression" among his combination of "severe" impairments (A.R. 12) is not consistent with his findings that Plaintiff has "no significant medically determinable mental impairment" (A.R. 13). At a minimum, the ALJ's decision is confusing on this issue and requires clarification, for the following reasons:

While the ALJ's finding of a "history of depression" presumably is based on the March 2005 assessment, the ALJ ignores the fact that the psychologist who authored that assessment: diagnosed Plaintiff as having, *at that time*, a "major depressive disorder" that was "recurrent [and] severe *with psychotic features*"; found that Plaintiff had a "significant impairment in an important area of life functioning" and the "probability of a significant deterioration in an important area of

---

[7] Plaintiff erroneously references 20 C.F.R. § 404.1520a(e)(2), which governs disability insurance benefits claims, rather than Section 416.920a(e)(2), which governs SSI claims. Section 416.920(a) proscribes the use of a "special technique" for evaluating the severity of mental impairments. Subsection (e)(2) states, in pertinent part:

> At the administrative law judge hearing and Appeals Council levels . . . the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

10

life functioning"; found that Plaintiff would benefit from mental health treatment; and found Plaintiff "[u]nable to work presently." (A.R. 252-54; emphasis added.) The ALJ also ignores Dr. Moore's note three months later that, after having been referred to a local mental health treatment center, Plaintiff was taking an anti-psychotic medication and two anti-depressant medications.[8] (A.R. 329.)

The ALJ misstates the record in asserting that there is no evidence of any mental health treatment and no treating source has rendered an expression of disability. (A.R. 13-14.) Accordingly, his conclusion that Plaintiff has "no significant medically determinable mental impairment" (A.R. 13) constitutes error. *See* Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998)(it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(an ALJ may not reach a conclusion and justify it by ignoring competent evidence in the record that would suggest an opposite result). In addition, the ALJ failed to articulate any reasons for disregarding the above-noted evidence of record. If the ALJ had concerns about the bases for the findings set forth in the March 2005 assessment or Dr. Moore's statement regarding Plaintiff's medications and treatment, it was the ALJ's responsibility to make the inquiries necessary to resolve those concerns. *See* Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct

---

[8] The record shows that the San Bernardino County of Behavioral Health prescribed some of these medications for Plaintiff in March and April 2005. (A.R. 247.)

an appropriate inquiry . . . ."); *see also* Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (addressing the ALJ's special duty to fully and fairly develop the record and to assure the claimant's interests are considered, even when the claimant is represented by counsel). The ALJ, however, could not simply ignore this evidence.

The ALJ did acknowledge the March 2005 assessment finding that Plaintiff has a GAF of 44, but the ALJ's conclusion regarding that GAF finding was improper. Although a GAF score is not determinative of a mental disability for social security claim purposes,[9] Plaintiff's GAF of 44 suggests that it is likely he may have significant symptoms and limitations resulting from his mental impairment. The ALJ's pronouncement that this GAF assessment, instead, was premised purely on Plaintiff "having problems with anger while caring for his elderly mother and his disabled wife" (A.R. 13) was inappropriate. It was error for the ALJ to render a medical judgment and interject his own medical opinion that there was a single specific source of Plaintiff's low GAF. *See* Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record). The ALJ's interjection of his own medical judgment regarding the allegedly limited basis for the March 2005 GAF assessment was particularly inappropriate given the content of the March

---

[9] *See, e.g.*, 65 Fed. Reg. 50746, 50765 (August 21, 2000)("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)(rejecting the claimant's argument that the ALJ improperly failed to consider her GAF from her treating physicians in assessing her residual functional capacity, reasoning that "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy" and an "ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate").

2005 assessment (including the findings of "paranoid ideation," "some psychotic features," and reports of memory problems, flashbacks, and hallucinations) and Dr. Moore's June 2005 report (noting Plaintiff's numerous anti-psychotic and anti-depressant medications and Plaintiff's statement that he had been seeing a psychiatrist for four months because of "stress").  (A.R. 329.)

Further, the ALJ's finding that there is no "significant medically determinable mental impairment" due to Plaintiff's "lack of treatment for any affective or psychotic disorder" (A.R. 13) not only appears to be factually erroneous, as discussed above, but also would not have been specific and legitimate even if the purported "lack of treatment" was supported by the record.  Even if Plaintiff had failed to seek mental health treatment before or after the March 2005 assessment, this would not be a valid reason for rejecting the findings set forth in the March 2005 assessment.  See Regennitter v. Comm'r., 166 F.3d 1294, 1299-1300 (9th Cir. 1999)(claimant's failure to seek treatment for his claimed mental impairment was an invalid reason to reject the opinion of an examining medical expert, noting that mental illness is "notoriously underreported"); Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)("the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [an examining psychologist's] assessment of claimant's condition is inaccurate," and reasoning that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation'"; citation omitted).

Finally, the ALJ's reliance on the June 2005 report of Dr. Moore for the finding that Plaintiff did not have a significant medically determinable mental impairment was neither appropriate nor supported by substantial evidence. As noted above, even though Plaintiff indicated that he had been seeing a psychiatrist for four months and was taking both anti-depressant and anti-psychotic medication, Dr. Moore's evaluation makes clear that he did not possess records from Plaintiff's treating psychiatrists or the March 2005 assessment. Moreover, Dr. Moore's evaluation makes clear that he did not purport to conduct any psychiatric/psychological testing or mental health assessment of Plaintiff and, instead, performed only "physical" and "neurological" examinations. (A.R. 329-30.) Indeed, Dr. Moore states that the Commissioner requested only that he perform a "neurological examination" of Plaintiff. (A.R. 328.) Dr. Moore's report not only does not purport to render a mental health opinion other than as to neurological issues, but also is not based on a sufficiently complete picture of Plaintiff's condition.[10] Accordingly, Dr. Moore's report does not constitute

---

[10] See 20 C.F.R. § 416.917 ("[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition."); Nalley v. Apfel, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000)("when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner"). See also Hurstrom v. Barnhart, 233 F. Supp. 2d 1159, 1166 (S.D. Iowa 2002)("There is no indication that either [consultative physician] had access to any of the medical records which were available at the time of their examinations. . . . Even if Plaintiff told the consulting doctors that he had no limitations, these statements are not credible in light of the numerous laboratory reports showing that his blood sugar is out of control."); Ladue v. Chater, 1996 WL 83880, *5 (N.D. Cal. 1996)(requiring remand where "[t]he ALJ failed to conform to 20 C.F.R. § 404.1517 requiring that the consultative examiner be provided with necessary background information regarding the claimant's condition [and] it appears from the record that the ALJ gave Dr. Mehta's consultative report considerable weight, even though Dr. Mehta was lacking important background information regarding plaintiff").

14

substantial evidence on the question of whether Plaintiff has a determinable mental impairment, and it was error to rely on it in place of the March 2005 assessment.

For all these reasons, reversible error occurred with respect to the ALJ's assessment of Plaintiff's claimed mental impairment. Reversal for an award of benefits is not appropriate, however, because there is no opinion from a treating source as to what Plaintiff's mental limitations would be in a work environment to credit as true. Furthermore, in view of Dr. Moore's report, which indicates that Plaintiff had been seeking psychiatric treatment for four months and was taking anti-depressant and anti-psychotic medications, it appears that there are medical records pertaining to Plaintiff's mental health treatment that are not contained in the record. Thus, further development of the record is necessary. On remand, the ALJ should develop the record regarding Plaintiff's claimed mental impairment appropriately, and then reconsider Plaintiff's mental impairment and attendant possible limitations in accordance with 20 C.F.R. § 416.920a.

**B.　The ALJ Failed To Evaluate Adequately The Side Effects Of Plaintiff's Medications On His Residual Functional Capacity.**

By his third claim, Plaintiff asserts that the ALJ committed error by failing to address the impact of the side effects of Plaintiff's medications on his residual functional capacity. The Court agrees.

In his application papers, Plaintiff clearly stated that he experiences drowsiness and memory problems as a result of taking his

15

medications.[11]  In addition, Plaintiff testified at the hearing that he experienced side effects from his medications "[j]ust at night," but the ALJ did not question Plaintiff about these side effects, much less his "just at night" statement.[12]

The ALJ's sole acknowledgment in his decision that Plaintiff takes medications is the following:  "I will find the claimant limited to light work with the ususal seizure restrictions as well as mild manipulative limitations because the claimant is taking a lot of medication."  (A.R. 14.)  The ALJ failed to address, much less account for, Plaintiff's statements that these medications make him drowsy -- statements that are objectively reasonable given the nature of many of his medications, which include anti-seizure medication, high blood

---

[11]  A.R. 31 -- Plaintiff's April 26, 2004 Request for Hearing by Administrative Law Judge, stating that Plaintiff disagreed with the determination on his claim "because of seizures and TIA and medication"; 63 -- June 6, 2003 Plaintiff's Disability Report, noting that Plaintiff experienced "drowsiness" due to taking Benadryl for his allergies; 92 -- December 5, 2003 letter, noting that Plaintiff forgot to have his doctors sign papers due to his medications and seizures; 103-11 -- December 17, 2003 Function Report completed by Vanessa Mackey, Plaintiff's sister, noting that Plaintiff "sleep[s] a lot due to medication" and Plaintiff's "medication cause[s] drowsiness"; 117 -- May 7, 2004 Disability Report - Appeal in which Plaintiff states that three medications (Dilantin for seizures and Adalat and Microzine for high blood pressure) cause "drowsiness."

[12]  The ALJ questioned Plaintiff as follows:

Q: Well, there's a lot of medication here.  Do you have any side effects from any of these meds?

A: Just at night.  I take a lot of medications at night, and I have side effects off of them.  That's when the medications increase.

(A.R. 355.)  The ALJ then changed the topic of questioning.  (*Id.*)

16

pressure medication, and narcotic pain reliever.[13]  Given that it is possible these medications could have one or more adverse side effects, such as drowsiness, which could affect Plaintiff's ability to perform in a work-place setting,[14] the ALJ erred by not considering these claimed side effects and further inquiring as to the impact of those medications on Plaintiff's ability to work. *See* Social Security Ruling 96-8p, 1996 WL 374184, *5 (July 2, 1996)("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as:  . . . The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., . . . side effects of medication)") (emphasis in original).  *See also* Varney v. Sec'y. of Health & Human Serv., 846 F.2d 581, 585 (9th Cir. 1988)("Like pain, the side effects of medications can have a significant impact on an individual's ability to

---

[13]  *See, e.g.*, 214 -- October 3, 2003 progress record, indicating Plaintiff was taking Neurontin, an anti-seizure medication; 217 -- October 2, 2003 progress record, noting that Plaintiff's medications included Dilantin, anti-seizure medication, and Procardia, a medication for hypertension; 230 -- July 31, 2002 emergency room record, indicating that Plaintiff was taking Benadryl; 258-59 -- March 1, 2005 treatment record, indicating that Plaintiff was taking Vicodin, a narcotic pain reliever, and Neurontin; 264 -- August 12, 2004 treatment record, indicating that Plaintiff's medications were refilled for Neurontin and Adalat, a blood pressure-reducing medication; *see also generally*, 280-321 -- copies of prescriptions from October 1993, to April 2005, for anti-seizure medication, including Neurontin (Gabapentin); high blood pressure medication, including Enalapril Maleate, Nifedipine, Lotensin, and Adalat; high cholesterol medication, including Zocor; and diabetes mellitus medication, including Metformin.

Several of these medications include warnings or findings that sleepiness is a symptom, including:  Lotensin (hydrochlorothiazide component), PDR 5730-1215 (Westlaw, updated May 2007)(drowsiness); Neurontin (Gabapentin), PDR 6240-3075 (Westlaw, updated May 2007)("somnolence"); Vicodin, PDR 0040-7305 (Westlaw, updated May 2007)(drowsiness, among other symptoms).

[14]  Defendant's reliance on Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985), is misplaced, because Plaintiff does not contend that his medication side effects render him disabled, only that their effect on his residual functional capacity must be considered.

17

work and should figure in the disability determination process."); Brown, 713 F.2d at 442-43 (the administrative law judge has an affirmative duty to develop the record, even if the claimant is represented by counsel).

Accordingly, the ALJ's failure to address Plaintiff's claimed side effects from his medications, and to develop the record on this issue as needed, constitutes reversible error.

**C.  Further Vocational Expert Testimony Will Likely Be Required On Remand.**

On remand, the ALJ's assessment of Plaintiff's residual functional capacity may change, because he must reevaluate Plaintiff's claimed mental impairment as well as the impact of the side effects of his medications. When the claimant has non-exertional limitations, an ALJ must seek the testimony of a vocational expert. *See* Reddick, 157 F.3d at 729. Because the ultimate finding regarding Plaintiff's residual functional capacity finding may change and additional testimony from a vocational expert likely will be required on remand, the Court does not reach the fourth issue Plaintiff raised (*i.e.*, regarding whether the ALJ properly relied on the vocational expert's testimony).

**D.  Remand Is Required.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors and to develop the record. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(when ALJ erred by

discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 26, 2007

                                                /s/
                                        MARGARET A. NAGLE
                                UNITED STATES MAGISTRATE JUDGE